1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

ZACHARY K.,

CASE NO. 2:22-CV-823-DWC

11

Plaintiff,

12

v.

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

COMMISSIONER OF SOCIAL
SECURITY,

14

Defendant.

15

16

     Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17

of his application for Supplemental Security Income disability benefits. Pursuant to 28 U.S.C. §

18

636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before

19

the undersigned.

20

     After considering the record, the Court concludes the Administrative Law Judge (ALJ)

21

provided clear and convincing reasons to discredit Plaintiff's subjective symptom testimony, but

22

erred when he failed to adequately assess the objective medical evidence. As these assessments

23

directly impact the residual functional capacity (RFC) assessment, the ALJ's errors were not

24

1  harmless and this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C.

2  § 405(g) for further proceedings consistent with this Order.

3  ## I. BACKGROUND

4  On January 9, 2020 Plaintiff applied for Title II disability insurance benefits and Title

5  XVI supplemental security income, alleging disability beginning December 2, 2019 due to post-

6  traumatic stress disorder (PTSD), depression, intermittent explosive disorder, and anxiety.

7  Administrative Record (AR) 284. His claims were denied initially and upon reconsideration. AR

8  158, 162, 167, 170. He requested a hearing, which was held on May 27, 2021 before an ALJ,

9  who denied his claim in a written decision dated June 30, 2021. AR 12, 36, 174; 20 C.F.R. §

10  416.1481.

11  ## II. STANDARD

12  Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

13  social security benefits if the ALJ's findings are based on legal error or not supported by

14  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

15  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

16  Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

17  harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

18  2008).

19  Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

20  Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

21  than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

22  only—such relevant evidence as a reasonable mind might accept as adequate to support a

23  conclusion." *Id*. (internal quotations omitted).

24

### III. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairment of degenerative disc disease of the cervical and lumbar spine, post-concussive syndrome, and PTSD. AR 17; 20 CFR 416.920(c).

The ALJ determined that Plaintiff had the RFC for light work, as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the following additional restrictions: the ability to frequently climb ramps and stairs; frequently reach overhead with the bilateral upper extremities; frequently be exposed to extreme cold and hazards (such as unprotected heights and exposure moving mechanical parts); and frequently kneel and crouch. AR 21-22. In addition, the ALJ found Plaintiff's RFC was limited by the ability to occasionally climb ladders, ropes, and scaffolds; occasionally stoop and crawl; occasionally engage in brief, superficial interactions with the general public and coworkers; and, occasionally engage in supervisory interactions. *Id*. Finally, the ALJ found Plaintiff had the RFC for simple, routine tasks within normal tolerances for a normal workday and workweek, with normal breaks. *Id*.

At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's age, with his education, work experience, and RFC, remained capable of performing jobs that exist in significant numbers in the national economy such as power screwdriver operator, routing clerk, or production assembler. AR 29; 20 CFR §§ 404.1569 and 404.969.

### IV. DISCUSSION

Plaintiff claims the ALJ failed to provide legally sufficient reasons to discount his subjective symptom reporting and also failed to properly evaluate the medical evidence. *See generally*, Dkt. 13. Plaintiff asks this Court to remand his claim for further proceedings. *Id*. Defendant maintains the decision denying benefits is supported by substantial evidence, free of legal error, and should be affirmed. *See generally*, Dkt. 17.

**A. The ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptoms.**

Plaintiff argues the ALJ failed to provide legally sufficient reasons for rejecting his testimony regarding his mental health related impairments. *See generally*, Dkt. 13.

1. The ALJ's Subjective Symptom Findings

The ALJ summarized Plaintiff's subjective symptom reporting as follows:

The claimant alleged the following: He experiences physical symptoms of headaches, back pain, and fatigue. He has **psychological symptoms of poor concentration, poor stress coping, anxiety, nightmares, interpersonal difficulties, and irritability**. His pain symptoms are worse with exertion. Stress causes him to experience emotional outbursts. His acute psychological exacerbations are characterized by flashbacks, erratic behaviors, pacing, and agitation.

\* \* \*

He has **medication side effects of dizziness, fatigue, and drowsiness**. His function report noted physical difficulties with lifting, bending, standing, reaching, walking, and climbing. It **also described mental difficulties with memory, concentration, task completion, understanding, and getting along with other**s. Overall, the claimant estimates that he could not walk more than 300 feet at one time, would have difficulty paying attention more than 10-20 minutes, and does not respond well to stress or changes in routine. He testified that, even in a job where he was working primarily by himself, **he would be unable to maintain such work due to emotional distress and PTSD episodes** (12E, 27E, Hearing Testimony).

AR 22 (emphasis added).

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23.

The ALJ found the "overall record" fails to support Plaintiff's allegations relating to his spinal impairments—a finding Plaintiff does not challenge, and therefore the Court will not discuss in further detail. AR 23; *see also*, *Cruz v. Int'l Collection Corp*, 673 F.3d 991, 998 (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's

1  opening brief") (internal quotations and citations omitted). Similarly, the ALJ found Plaintiff's

2  post-concussive syndrome and associated headaches and cognitive difficulties resolved with time

3  and medication—also findings Plaintiff does not challenge and will therefore not be disturbed.

4  *Id.*

5      Plaintiff does challenge the ALJ's finding that Plaintiff's activity level was inconsistent

6  with his claimed physical and cognitive limitations, which the ALJ described as "light cleaning

7  and housework, prepares simple meals, plays videos games for approximately six hours per day,

8  and occasionally does laundry or grocery shopping", the ability to "able to go out alone" and

9  "uses public transportation", and "generally finishes what he starts and is able to pay bills and

10  manage finances." AR 22, 24-25.

11      Plaintiff also challenges the ALJ's finding regarding Plaintiff's alleged mental-health

12  related impairments. The ALJ found record support for Plaintiff's "long-term symptoms of poor

13  concentration, emotional outbursts, anxiety, irritability, depression, social isolation, fatigue, and

14  intrusive thoughts" and noted that Plaintiff had undergone "psychological counseling" and had

15  prescriptions for several psychotropic medications. AR 24. The ALJ concluded that this

16  "evidence of long-term signs and symptoms, with diligent pursuit of treatment, provides some

17  basis for [Plaintiff's] alleged symptoms and limitations". *Id.*

18      Nevertheless, the ALJ found that "the longitudinal record fails to provide full support"

19  for Plaintiff's allegations because "providers have consistently described [Plaintiff] as calm and

20  cooperative with normal mood, affect, and eye contact" (citing AR 463, 484, 485, 488, 490, 500,

21  502, 504, 506, 568, 570, 571, 573, 575, 608, 619, 621, 625, 648, 673, 674, 678, 775, 803, 815,

22  817, 821), found him "to be in no acute distress" (AR 509, 514, 516, 518, 567, 580, 583, 586,

23  617, 677, 680, 813, 835, 854, 880, 950, 952), and "do not describe recurrent difficulties in terms

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

of [Plaintiff's] ability to control his emotions or behavior during appointments" (citing AR 484, 485, 488, 490, 500, 504, 568, 570, 571, 573, 575, 619, 621, 623, 625, 673, 674, 678, 815, 817, 819, 821). AR 24-25.

In addition, the ALJ stated that Plaintiff's mental status examinations were routinely within normal limits, describing Plaintiff as alert and oriented, with appropriate affect, and normal speech, thought processes, cognition, and content. AR 25, 484, 485, 488, 490, 500, 502, 504, 568, 570, 571, 573, 575, 578, 608-09, 619, 621, 623, 625, 628, 657, 673, 674, 677, 678, 750, 751, 752, 753, 769, 803, 815, 817, 819, 824, 836, 854, 880, 896, 950, 954. Such findings, according to the ALJ, "no not provide substantial support for [Plaintiff's] allegations that he is unable to pay attention more than 20 minutes at one time." *Id*.

Finally, the ALJ found that Plaintiff's mental-health related testimony is undermined by the fact Plaintiff had a "good response" to medication. AR 25.

2. <u>Legal Standard</u>

When assessing the reliability of a claimant's disability allegations, an ALJ considers the extent to which such allegations are consistent with the objective evidence and other evidence in the record. 20 C.F.R. § 416.929(c). Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the

nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

    3.  <u>Analysis of Plaintiff's Arguments</u>

       As stated above, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not "entirely consistent with the medical evidence and other evidence in the record". AR 23. While Plaintiff does not directly attempt to challenge this finding, he does argue that the ALJ's "general summary of some normal activities fails to identify inconsistencies between Plaintiff's allegations and the record as a whole." Dkt. 13 at 17. This Court does not find merit to this claim because the ALJ thoroughly explained that Plaintiff's activities undermine his claimed limitations associated with spinal problems and having experienced a concussion. AR 23-24. Although Plaintiff does not challenge these findings, the Court nevertheless affirms that they are clear and convincing reasons to discredit Plaintiff's testimony.

       Regarding Plaintiff's physical impairments, the ALJ explained that Plaintiff consistently exhibited normal gait and his neurological functioning was routinely intact. AR 23. The ALJ stated that imaging during the relevant period reflected mild issues, and that Plaintiff engaged in a conservative course of treatment for his spinal conditions. *Id*. The ALJ further found that Plaintiff had a good response to physical therapy, which he was discharged from after about a month with his therapist finding his back was "much more stable", "walking was easier", he had demonstrated "significant improvement" in his range of motion and headache symptoms, and exhibited "minimal to no muscle spasms now". *Id*.

       With regard to Plaintiff's post-concussive syndrome, the ALJ noted that after experiencing a head injury at work in December 2018, Plaintiff reported experiencing occasional headaches, nausea, and increased sensitivity to loud noise. *Id*. However, the ALJ found

1   Plaintiff's concussion had resolved by the next month with imaging reflecting that his brain was

2   "within normal limits", and his doctor concluding that Plaintiff was "back to baseline" and "okay

3   with working full duty." AR 23-24. Moreover, the ALJ determined that Plaintiff received

4   "conservative headache treatment". AR 24. Thus, the ALJ concluded that Plaintiff did not have

5   any lasting cognitive difficulties associated with the concussion. *Id*.

6          The ALJ supported each conclusion by identifying in the record the objective medical

7   evidence and showing how Plaintiff's impairments improved over time. As a result, the ALJ's

8   assessment of Plaintiff's subjective symptom reporting was supported by substantial evidence.

9          With regard to the ALJ's treatment of his mental health-related impairment testimony,

10  Plaintiff contends the ALJ's statement that treatment records "do not describe recurrent

11  difficulties in terms of [Plaintiff's] ability to control his emotions or behavior during

12  appointments" it is not a clear and convincing reason to reject his testimony because the ability

13  to interact with trained mental health professionals is not inconsistent with his testimony that he

14  has great difficulty dealing with the general public. Dkt 13 at 16 (citing AR 24 and *Tina R. v.*

15  *Commr. of Soc. Sec*., Case No. C18-1041-JLR, 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29,

16  2019)(finding the "medical treatment relationship is not like the relationship a worker has with

17  her coworkers, supervisors, or the general public. The goals and nature of interacting with

18  healthcare providers is different."). Moreover, Plaintiff argues the ALJ's selective references to

19  occasions when his mental status was assessed as "normal" do not "cancel out" the occasions

20  when his mental status was described as severely "abnormal". Dkt. 18 at 6 (citing *Johnson v.*

21  *Berryhill,* Case No. C17-5623-MAT, 2018 WL 3008879, at *4 (W.D. Wash. June 15, 2018)

22  ("…the existence of other normal findings does not negate Dr. Wingate's examination.").

23

24

1    Defendant insists the ALJ's role is not to "reconcile" inconsistent clinical findings, but to

2    synthesize the medical evidence into a residual functional capacity assessment, which the ALJ

3    did by including a number of limitations in his RFC that accommodate for Plaintiff's mental-

4    health related symptoms. Dkt. 17 at 5 (citing AR 24). Moreover, Defendant argues that the ALJ

5    did not only cite to mental-health appointments where Plaintiff was a-symptomatic, but also a

6    few physical-health appointments. Dkt. 17 at 6 (citing AR 509, 514, 835, 854, 880, 950, 952,

7    954).

8    The Court concurs with Plaintiff that the ALJ fails to explain how his "normal"

9    presentation at healthcare appointments discredits his claim that he is extremely impaired in the

10   ability to get along with co-workers. Whether these appointments were with mental healthcare

11   specialists or other healthcare professionals, the law is clear that a Plaintiff's ability to interact

12   pleasantly with healthcare professionals who seek to help him does not translate into an ability to

13   interact pleasantly with the general public. Therefore, this was not a clear and convincing reason

14   to discredit Plaintiff's testimony regarding his inability to get along with co-workers.

15   Nevertheless, "harmless error" principles apply in the Social Security context. *Molina v.*

16   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to

17   the claimant or if it is "inconsequential" to the ALJ's "ultimate nondisability determination."

18   *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674

19   F.3d at 1115. The determination whether an error is harmless requires a "case-specific

20   application of judgment" by the reviewing court, based on an examination of the record made

21   "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at

22   1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

1    Here, although the ALJ's finding that Plaintiff's "normal" presentation at healthcare

2 appointments discredited his testimony regarding his ability to get along with co-workers, this

3 error was harmless as the ALJ cited other clear and convincing reasons, as discussed above, for

4 discrediting Plaintiff's testimony. *Batson*, 359 F.3d at 1197.

5    In conclusion, the Court finds the ALJ provided clear and convincing reasons to discredit

6 Plaintiff's subjective symptom testimony.

7 **B. The ALJ's evaluation of some of the objective medical evidence was not legally**
   **sufficient.**

8
   1.  The ALJ's Mental Health Record Findings

9
      The ALJ was persuaded by the opinions of state agency psychological consultants John

10 D. Gilbert, Ph.D., and Matthew Comrie, Psy.D., who found Plaintiff capable of simple tasks and

11 ordinary, routine work without special supervision; occasional, brief, and superficial contact with

12 the general public and coworkers; and completing a normal work week consisting of simple

13 tasks, with normal breaks. AR 25-26, 97-99, 112-13, 130-31, 147-148. However, Plaintiff

14 contends the ALJ failed to support his rejection of the medical opinions of Katrina Heinz-Query,

15 LMHCA, and Susan Hakeman, M.D., with substantial evidence. *See generally*, Dkt. 13.

16
   2.  Legal Standard

17
      The regulations regarding the evaluation of medical opinion evidence have been amended

18 for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of

19 Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-5868;

20 *5878-5879 (Jan. 18, 2017). Since Plaintiff filed his claim after that date, the new regulations

21 apply. *See*, 20 C.F.R. §§ 416.1520c and 416.920c.

22
      Under the revised regulations, ALJs "will not defer or give any specific evidentiary

23
   weight, including controlling weight, to any medical opinion(s) or prior administrative medical

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate each opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416. 1520(c)(a) and 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] … decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

   3.  <u>Analysis of Plaintiff's Arguments</u>

     *a.  Katrina Heinz-Query, LMHCA*

On April 16, 2020, Katrina Heinz-Query, LMHCA (Heinz-Query), completed a mental functional capacity assessment of Plaintiff and opined that he is markedly limited in multiple work-related areas, such as the ability to: work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest breaks; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and, get along with co-workers or peers without distracting them or exhibiting behavioral extremes. AR 1037-1039.

1    In addition, Heinz-Query opined that Plaintiff is moderately limited in the ability to ask

2    simple questions or request assistance, and to respond appropriately to changes in the work

3    setting. AR 1039.

4    The ALJ found Heinz-Query's opinion was unpersuasive, explaining:

5    They do not comport with the overall record, which shows **conservative treatment**
     with **routinely intact findings relating to mood and behavior** (8F/4, 11F/9,

6    12F/2/6/7, 16F/49, 18F/18, 19F/11/29/55/71/125). Providers consistently noted
     intact cognitive functioning (8F/4, 12F/2, 16F/49, 17F/15, 19F/71, 21F/1). This

7    degree of limitation also does not reflect the **claimant's good responses to**
     **medication** (16F/45, 21F/2/5/11). This statement is also not well supported, as it

8    did not provide a clear evaluation of the claimant's long-term clinical findings, but
     rather **noted that it was based in part on the claimant's subjective reports**

9    (20F/4).

10   AR  (emphasis added).

11   Plaintiff asserts the ALJ fails to explain how the medial records he cites are inconsistent

12   with Heinz-Query's opinion, and overlooks Heinz-Query's own treatment notes which not only

13   support her opined limitations, but also disprove that she simply credited Plaintiff's subjective

14   complaints. Dkt. 13 at 8-9.

15   Regarding supportability, Plaintiff points out that Heinz-Query did not find that Plaintiff

16   was significantly limited in the ability to maintain attention and concentration for extended

17   periods, despite Plaintiff reporting an inability to concentrate, feeling easily distracted, and

18   forgetting what he is doing. Dkt. 13 at 8 (citing AR 652, 1038). Moreover, Heinz-Query's own

19   treatment notes document her clinical impressions such as that Plaintiff suffered from a

20   depressed mood with anxious affect (AR 754, 755, 756, 747, 758, 763), exhibited signs of

21   declining daily activities and personal hygiene, increasing isolation, irritability, and paranoia

22   (AR 558, 648, 750, 752, 757, 760), exhibited symptoms consistent with PTSD, including the

23   need to carry stuffed animals for self-soothing (AR 647, 751), was "tangential and challenging to

24

redirect" and expressed incongruent ideas of wanting to be part of something but also wanting to be separate. AR 647, 651, 750, 761, 762. Plaintiff insists the ALJ did not consider these records or explain how they failed to support Heinz-Query's opinion, but instead selectively identified benign mental status findings unrepresentative of the record as a whole. Dkt. 18 at 3.

The Court concurs with Plaintiff that the ALJ failed to identify what evidence supported his conclusion that Heinz-Query relied to an inappropriate degree on Plaintiff's subjective complaints rather than her professional judgment, and failed to acknowledge Heinz-Query's own supporting treatment notes, making it impossible for this Court to meaningfully consider whether the ALJ took them into account. *See*, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.")).

Regarding consistency, Plaintiff argues the ALJ's finding that Heinz-Query's opinion was inconsistent with the overall record, "which shows conservative treatment with routinely intact findings relating to mood and behavior" is legally and factually erroneous. Dkt. 13 at 5.

Plaintiff points to case law finding that the prescription of psychotropic medication does not constitute "conservative treatment". Dkt. 13 at 5 (citing AR 47 and *Sanchez M. v. Kijakazi*, 2:20-CV-08149-PD, 2022 WL 2102869, at *3 (C.D. Cal. Mar. 1, 2022); *Mickei L. B. v. Commr. of Soc. Sec.*, C18-6048 TLF, 2020 WL 1502931, at *4 (W.D. Wash. Mar. 30, 2020) ("There is no evidence in the record indicating that the prescription of 'psychotropic medication' and outpatient treatment is in fact conservative."). Moreover, Plaintiff insists that the fact medications were "helpful" to him is not inconsistent with Heinz-Query's opinion because "one can 'improve' from a gravely disabled state yet remain unable to sustain substantial gainful

1  activity in a competitive work environment." Dkt. 18 at 2-3 (citing *Del Toro v. Berryhill*, Case

2  No. 1:17-CV-01401-BAM, 2019 WL 495001, at *5 (E.D. Cal. Feb. 8, 2019)).

3       The Court concurs with Plaintiff that the ALJ erroneously characterized his mental health

4  treatment as "conservative" and committed further legal error by selectively relying on normal

5  findings while omitting reference to records reflecting findings of anxious, depressed, and/or

6  irritable mood. *See e.g.*, AR 568, 571, 647, 668, 673, 678, 760, 763, 769, 707-708; *see also*,

7  *Rokiyah V. v. Commr. of Soc. Sec.*, Case No. 3:22-CV-5206-DWC, 2022 WL 13848091, at *2

8  (W.D. Wash. Oct. 24, 2022)(the ALJ's failure to consider the conflicting findings and "explain

9  the discrepancies" constitutes legal error); *see also*, *Attmore v. Colvin*, 827 F.3d 875, 877 (9th

10  Cir. 2016)(the ALJ's selective reliance on only the normal findings was legal error).

11       In sum, the Court finds the ALJ's assessment of Heinz-Query's opinion is not supported

12  by substantial evidence.

13       *b.   Susan Hakeman, M.D.*

14       On December 9, 2019, Plaintiff presented for a psychiatric evaluation with Susan

15  Hakeman, M.D. (Hakeman), and reported diagnoses of PTSD, intermittent explosive disorder,

16  and post-concussive syndrome, as well as symptoms of constant fatigue, depression, and anxiety.

17  AR 606. Hakeman observed that Plaintiff presented with significant body odor, carried a stuffed

18  animal, walked stiffly, had a fair to reduced affect, a fearful thought process and content,

19  difficulty with delayed memory, and required cueing. AR 608-09. Hakeman further found that

20  Plaintiff struggled to interpret a proverb and that his insight and judgment were fair. AR 609.

21       Hakeman opined that Plaintiff has a "severe" limitation in the ability to do the following:

22  understand, remember, and persist in tasks by following detailed instructions; maintain regular

23  attendance and be punctual within customary tolerances without special supervision; perform

24  routine tasks without special supervision; adapt to changes in a routine work setting;

communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and, complete a normal work day and work week without interruptions from psychologically based symptoms. AR 607. Hakeman further opined that Plaintiff is "markedly" limited in the ability to ask simple questions or request assistance, and to set realistic goals and plan independently. AR 607.

The ALJ found "limited support" for Hakeman's opinion, explaining that although it was "accompanied by recent examination findings such as poor grooming, fearful thought processes, and a reduced range of affect", Hakeman's conclusion that Plaintiff has extensive cognitive and intellectual deficits was not supported by her examination findings and was not consistent with the "overall record, which shows conservative treatment with routinely intact findings relating to mood and behavior" and healthcare providers "consistently not[ing] intact cognitive functioning", "normal grooming", and "good responses to medication". AR 27.

According to Plaintiff, the ALJ legally erred by partially discrediting Hakeman's opinion due to Plaintiff's cognition. Dkt. 13 at 12. Plaintiff insists cognitive ability and intellect are not equivalent to the ability to sustain concentration, persist on tasks, and maintain pace. Dkt. 13 at 12 (citing, *inter alia*, *Gattman v. Colvin*, 3:15-CV-00466, 2016 WL 1732660, at *2–3 (D. Or. May 2, 2016)("Plaintiff's limitations in concentration, persistence, and pace do not arise out of cognitive limitations but from anxiety and depression. There is no conflicting evidence in the record as to limitations of concentration, persistence and pace.")).

In addition, Plaintiff argues the ALJ's string citations to allegedly "routine intact findings relating to mood and behavior" and "intact cognitive functioning" is factually erroneous as the record also contains findings that he was anxious, depressed, and/or irritable, and had limited insight and judgment. Dkt. 13 at 13 (citing 568, 571, 647, 668, 673, 678, 760, 763, 769, 707-08).

1    In addition, Plaintiff contends the ALJ's assertion that Plaintiff had a "good response to

2    medication" was inaccurate because records show Plaintiff's medications were often adjusted

3    and that he continued to self-isolate even with medication and talk therapy. *Id*. (citing AR 770,

4    738-39, 818, 1044-46, 1048, 1051).

5         Defendant responds that the ALJ provided specific citations to the record that directly

6    support her findings. Dkt. 17 at 12 (citing AR 26-27).

7         While the ALJ's citations to the record do support her findings, the Court concurs with

8    Plaintiff that that ALJ failed to meet her burden of building an "'accurate and logical bridge from

9    the evidence to her conclusion' so that the reviewing court may assess the validity of the

10   agency's ultimate findings and afford a claimant meaningful judicial review." *See*, Dkt. 13 at 12

11   (citing *Micheal D. v. Comm'r of Soc. Sec*., Case No. 2:22-CV-464-DWC, 2022 WL 4377400, at

12   *3 (W.D. Wash. Sept. 22, 2022); *see also*, *Tate v. Astrue*, Case No. 1:11-CV-01643- SKO, 2013

13   WL 211259, at *5 (E.D. Cal. Jan. 18, 2013) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th

14   Cir. 2002)).

15        Here, the ALJ cited evidence relating to Plaintiff's cognitive functioning related to his

16   post-concussive syndrome, but did not explain how she reached the conclusion that Plaintiff's

17   intact cognitive performance undermined Hakeman's opinion regarding Plaintiff's emotional

18   functionality. *See*, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (noting that

19   "observations of cognitive functioning during therapy sessions [did] not contradict [the

20   claimant's] reported symptoms of depression and social anxiety").

21        In addition, the ALJ's analysis included string citations which selectively show only

22   normal findings and omit reference to, or discussion of, records reflecting findings of anxious,

23

24

1  depressed, and/or irritability. In sum, the Court finds the ALJ's assessment of Hakeman's

2  opinion is not supported by substantial evidence.

3  **C.  The ALJ committed harmful error requiring remand for further proceedings.**

4  Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d

5  1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

6  claimant or if is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

7  *Commissioner Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The determination

8  as to whether an error is harmless requires a "case-specific application of judgment" by the

9  reviewing court, based on an examination of the record made "'without regard to errors' that do

10  not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v.*

11  *Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

12  Here, the ALJ's legally insufficient rejection of Plaintiff's subjective symptom testimony,

13  together with the deficiencies in the ALJ's assessment of the medical evidence, preclude this

14  Court from meaningfully determining whether the ALJ's denial of Plaintiff's claim was

15  supported by substantial evidence.

16  For instance, if the ALJ had credited Heinz-Query or Hakeman's opinions he may have

17  included far more restrictive limitations in Plaintiff's RFC. Accordingly, these errors were not

18  harmless. *See*, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)

19  (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995))("We will 'disturb the

20  Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is

21  based on legal error.'").

22  Consequently, this matter must be reversed and remanded for reevaluation of the two

23  medical opinions discussed herein, and reassessment of the five-step sequential evaluation.

24

# V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ improperly concluded that Plaintiff was not disabled. Accordingly, this matter is REVERSED and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

Dated this 13th day of April, 2023.

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 18